IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MEMORIAL HERMANN HOSPITAL       §
SYSTEM,                         §
                                §
        Plaintiff,              §
                                §
v.                              §          CIVIL NO. H-07-3816
                                §
COVENTRY HEALTH AND LIFE        §
INSURANCE COMPANY, COVENTRY     §
HEALTH CARE OF LOUISIANA, INC., §
and LAMARQUE FORD, INC.,        §
                                §
        Defendants.             §

## MEMORANDUM OPINION

Pending before the court[1] are Defendants' Motion to Dismiss All State Claims Pursuant to F.R.C.P. 12(b)(6)(Docket Entry No. 6), and Defendants' Motion for Summary Judgment (Docket Entry No. 12). For the reasons set forth below, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, and **GRANTS** Defendants' motion for summary judgment.

## I.  Case Background

Plaintiff Memorial Hermann Hospital System ("Plaintiff Hospital") brought this action against Defendants Coventry Health and Life Insurance Company ("Coventry Life") and Coventry Health Care of Louisiana, Inc. ("Coventry Louisiana").[2] Plaintiff alleges

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 19, 20, 23.

[2]    See Plaintiff's Original Petition, Docket Entry No. 1, Ex. A, p. 1. Lamarque Ford, Inc., employer of the insured, was dismissed as a defendant in this case by a previous order of the court. See Order dated March 4, 2008,

the following state claims: (1) Texas insurance code and deceptive trade violations; (2) breach of contract; (3) negligence; and (4) negligent misrepresentation.[3]  Plaintiff Hospital is a non-profit entity with offices in Houston, Texas.[4]  Defendant Coventry Life is a Delaware corporation, and Defendant Coventry Louisiana, a subsidiary of Coventry Life, is a Louisiana corporation.[5]

Coventry Louisiana and Lamarque entered into a contract on January 1, 2006, wherein Coventry Louisiana was to administer a group health insurance plan ("the Plan") to eligible Lamarque employees and their dependants.[6]  Participants in the Plan are provided a copy of the Health Assurance Membership Handbook ("Handbook") and Group Membership Agreement ("Agreement") as underwritten by Coventry Life.[7]  Under the Plan, each participating employee pays a portion of the insurance premium, while Lamarque provides the remaining portion.[8]

On or about March 29, 2007, Mark X ("Mark"), an employee of

---

Docket Entry No. 22.

[3]     Plaintiff's Original Petition, Docket Entry No. 1, pp. 4, 8.

[4]     Plaintiff's Original Petition, Docket Entry No. 1, Ex. A, p. 1.

[5]     Id. at 1-2.

[6]     Defendants' Motion for Summary Judgment, Docket Entry No. 12, Ex. A.1, Group Master Contract, p. 1.

[7]     Id.; Ex. A.2, Coventry Health Assurance Membership Handbook, pp. 2-4; Ex. A.2, Group Membership Agreement, p. 1.

[8]     Affidavit of Kristi Lamarque Hawkins ("Hawkins Affidavit"), Docket Entry No. 12, p. 2.

Lamarque Ford, was admitted to Plaintiff Hospital for medical treatment.[9]  Mark is covered under the Plan.[10]  Around the time of admission, Plaintiff Hospital contacted Defendants to verify Mark's insurance coverage and benefits.[11]  An employee, agent, or representative of Defendants informed Plaintiff Hospital that Mark was covered under an insurance plan with an effective date of coverage of January 1, 2006.[12]  Plaintiff Hospital was informed that Mark's benefits were as follows: $1000.00 deductible, of which $135.65 had already been met; $3000.00 out-of-pocket; and sixty percent payment.[13]  The claim was to be paid via the First Health Group Corporation ("First Health"), a corporation owned by Defendants.[14]  Defendants paid $88,977.00 of Mark's total medical charges of $315,068.75, leaving a balance of  $224,591.75.[15]

Plaintiff filed this action against Defendants in state court in Harris County, Texas on October 15, 2007.[16]  Defendants removed the action to federal court on the basis of diversity

---

[9]     Plaintiff's Original Petition, Docket Entry No. 1, Ex. A, p. 3.

[10]    Hawkins Affidavit, Docket Entry No. 12, p. 2.

[11]    Plaintiff's Original Petition, Docket Entry No. 1, Ex. A, p. 3.

[12]    Id.

[13]    Id.

[14]    Id.

[15]    Id. at 3-4.

[16]    Id. at 1.

jurisdiction.[17]  Defendants subsequently filed a motion to dismiss
all state law claims asserted by Plaintiff Hospital,[18] and a motion
for summary judgment requesting that the court determine, as a
matter of law, that Mark's insurance plan is covered under ERISA.[19]

## II.  Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal
of a complaint for a "failure to state a claim upon which relief
can be granted."  Fed. R. Civ. P. 12(b)(6).  While a complaint
attacked by a Rule 12(b)(6) motion to dismiss need not detail
factual allegations, a plaintiff's obligation under the Federal
Rule of Civil Procedure 8(a)(2), "requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action will not do."  Bell Atlantic Corp. v. Twombly, ___ U.S.
___, 127 S. Ct. 1955, 1965 (2007); Papasan v. Allain, 478 U.S. 265,
286 (1986).  "Factual allegations must be enough to raise a right
to relief above the speculative level."  Twombly, 127 S. Ct. at
1965 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1216 (3d ed. 2004)).  "The pleading must
contain something more . . . than . . . a statement of facts that
merely creates a suspicion of a legally cognizable right of
action."  Id.

---

[17]     Notice of Removal, Docket Entry No. 1.

[18]     See Defendants' Motion to Dismiss, Docket Entry No. 6, p. 1.

[19]     See Defendants' Motion for Summary Judgment, Docket Entry No. 12, p.
14.

4

### III.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

The court will only resolve factual controversies in favor of the nonmoving party when a controversy actually exists; in other words, no controversy exists when factual allegations are not challenged by the nonmoving party. Little v. Liquid Air Corp., 37

6

F.3d 1069, 1075 (5th Cir. 1994).   Therefore, assumptions or inferences that the nonmoving party could or would prove the necessary facts will not be made.   Id.

### IV.  Analysis

Defendants contend that Plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and urges the court to dismiss them on that basis.   Plaintiff maintains that dismissal is inappropriate because: (1) Defendants have not met their burden to prove that the plan involved in this case is in fact an ERISA plan; and (2) Plaintiff is a third party asserting claims independent of any alleged ERISA plan.

### A.  ERISA Preemption Law

The Fifth Circuit has established a comprehensive framework to be employed when analyzing questions related to ERISA preemption. Two types of preemption exist under said framework: complete and conflict preemption.  Complete preemption "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and gives rise to federal question jurisdiction. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987).  Claims are subject to complete preemption when a claimant seeks relief within the scope of ERISA's civil enforcement provisions under ERISA Section 502(a). Id. at 66; 29 U.S.C. § 1132(a); Arana v. Ochsner Health Plan, 438 F.3d 338, 437-

7

38 (5th Cir. 2003).  To fall within Section 502(a): (1) an employee benefit plan must exist; and (2) the plaintiff must have standing to sue under Section 502(a).  <u>Vega v. Nat'l Life Ins. Servs., Inc.</u>, 188 F.3d 287, 291 (5th Cir. 1999).

Unlike complete preemption, conflict (or ordinary) preemption does not overcome the well-pleaded complaint rule to convert state law claims into federal claims.  See <u>Arana</u>, 438 F.3d at 439.  In the case of conflict preemption, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  While the Supreme Court has explained that a state law is considered to "relate to" an ERISA employee benefit plan "if it has a connection with or reference to such a plan," the Court has also acknowledged that "some state laws may affect an ERISA plan in too tenuous, remote or peripheral a manner" to warrant a finding that the state law is preempted.  <u>See Transitional Hosps. Corp. v. Blue Cross & Blue Shield, Inc.</u>, 164 F.3d 952, 954 (5th Cir. 1999)(quoting <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 96-97 (1983))(internal quotations omitted).

The test for conflict preemption evaluates the nexus between ERISA and the asserted state law claim in the context of ERISA's statutory objectives.  A state law claim is subject to conflict preemption if the following two-prong test is met:

> (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationship among the traditional

ERISA entities -- the employer, the plan and its
fiduciaries, and the participants and beneficiaries.

Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 245
(5th Cir. 1990); see also Mayeaux v. La. Health Serv. & Indem. Co.,
376 F.3d 420, 432 (5th Cir. 2004).

While preemption is clearly appropriate when a state cause of
action directly affects the relationship among traditional ERISA
entities (i.e., the employer, the plan and its fiduciaries, the
participants, and the beneficiaries), it is similarly inappropriate
when it has the effect of shielding those entities from claims
brought by independent third parties who were not intended partners
in the "ERISA bargain" imposed by Congress.   See Memorial Hosp.
Sys., 904 F.2d at 249-250.

In this case, Defendants employ the conflict preemption
standard enunciated in 29 U.S.C. § 1144(a), arguing that
Plaintiff's claims "relate to an employee benefit plan such that
Memorial Hermann's claims are subject to ordinary [conflict]
preemption."[20]   Because the court already has jurisdiction over
Plaintiff's claims pursuant to diversity jurisdiction, and because
Defendants' motion to dismiss is based upon conflict preemption,
the court will evaluate whether Plaintiff's state law claims meet
the standard for conflict preemption.

**B.  Does the Policy Constitute an ERISA Employee Benefit Plan?**

---

[20]    Defendants' Motion to Dismiss, Docket Entry No. 6, p. 15 (internal
quotations omitted).

In order for Plaintiff's state law claims to be preempted by ERISA, the Plan must qualify as an employee benefit plan under ERISA.  Defendants have filed a motion for summary judgment asking the court to determine said issue as a matter of law.

ERISA defines an "employee welfare benefit plan," in part, as "any plan, fund or program . . . established or maintained by an employer or an employee organization, . . . for the purpose of providing [benefits] for its participants or their beneficiaries . . . ." 29 U.S.C. § 1002(1).  In other words, in order to determine whether the Plan qualifies as an employee welfare benefit plan, the following questions must be addressed: (1) Does the Plan exist; (2) Does the Plan fall outside the safe harbor exclusion established by the Department of Labor; and (3) Does the Plan satisfy the requirement that the ERISA plan be established or maintained by an employer intending to benefit plan participants.  Shearer v. Sw. Serv. Life Ins., 516 F.3d 276, 279 (5th Cir. 2008); McNeil, 205 F.3d at 189.  "If any part of the inquiry is answered in the negative, the submission is not an ERISA plan."  Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993).

**1.  Does a Plan Exist?**

In deciding whether a benefit plan exists, a court must look at the surrounding circumstances and determine whether "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving

10

benefits." <u>Memorial Hosp. Sys.</u>, 904 F.2d at 236; <u>Meredith</u>, 980 F.2d at 355.

Defendants assert that, by looking to the Handbook and Agreement, a reasonable person could ascertain the Plan's intended benefits, beneficiaries, and procedures for receiving benefits. Defendants further assert that the joint contribution by Lamarque and Lamarque employees to insurance premiums would inform any reasonable person of the source of the Plan's financing. In its response, Plaintiff does not challenge Defendants' factual allegations; therefore, the court will make no assumptions as to Plaintiff's ability to prove any necessary facts on this issue. <u>See</u> <u>Little</u>, 37 F.3d at 1075.

The court finds that an employee welfare benefit plan exists in this case. The Plan's intended benefits are set forth in a section of the Agreement specifically labeled as "Covered Services."[21] Beneficiaries are discussed in the "Eligibility" section of the Agreement.[22] The procedure for receiving benefits is explained in the Handbook[23] and throughout the Agreement.[24] The Group Master Contract between Lamarque and Coventry Louisiana

---

[21]     Defendants' Motion for Summary Judgment, Docket Entry No. 12, Ex. A.2, Group Membership Agreement, p. 15.

[22]     <u>Id.</u> at 39.

[23]     Defendants' Motion for Summary Judgment, Docket Entry No. 12, Ex. A.2, Coventry Health Assurance Membership Handbook, pp. 2-4.

[24]     Defendants' Motion for Summary Judgment, Docket Entry No. 12, Ex. A.2, Group Membership Agreement.

indicates that each subscriber of the group is to be provided, among other things, a copy of the Handbook and Agreement, or other material setting forth covered services for the subscriber and eligible dependants.[25]   As to the source of financing, policy premiums are paid by both Lamarque and Lamarque employees.[26]

Accordingly, the court finds that a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits under the plan at issue.  A plan exists.

### 2.  Does the ERISA Safe Harbor Apply?

The Department of Labor has carved out a four-pronged ERISA "safe harbor" exempting certain insurance plans from ERISA governance.  See 29 C.F.R. §§ 2510.3-1(j).  To be exempt, a plan must satisfy all of the following criteria: (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan.  McNeil, 205 F.3d at 190; see also Meredith, 980 F.2d at 355.

Defendants assert that the Plan does not meet the criteria for exclusion from ERISA coverage.  Specifically, Defendants assert

---

[25]     Defendants' Motion for Summary Judgment, Docket Entry No. 12; Ex. A.1, Group Master Contract, p. 1.

[26]     Hawkins Affidavit, Docket Entry No. 12, p. 3.

that Lamarque makes contributions to the Plan premium and that Lamarque's involvement in the plan is not limited solely to permitting the insurer to publicize the insurance program or collecting and remitting premiums.  Plaintiff does not challenge Defendants' factual allegations on this issue in its response.

Here, Lamarque, as the employer, contributes a portion of the Plan premium and is "solely responsible . . . for remitting the entirety of the monthly premiums attributed to covered participants of the Plan, directly to Coventry by the premium due dates."[27] Lamarque also employs an individual, Kristi Lamarque Hawkins ("Hawkins"), who "functions as an employee benefits administrator who, among other things, administers the open enrollment period defined by the Group Master Contract."[28]

Accordingly, the court agrees with Defendants that the Plan fails to meet prong one and prong three of the safe harbor requirements because Lamarque contributes to the Plan and is involved beyond simply collecting and remitting premiums or permitting to publicize the insurance program.  See Hansen, 940 F.2d at 978 (finding an ERISA plan based, in part, upon the employer assuming "some responsibility for the administration of the program and the payment of benefits, by providing a full time employee benefits administrator who accepted claim forms from

---

[27]   Id.

[28]   Id.

13

employees and submitted them to the insurer"). The court finds that the Plan remains eligible for ERISA status.

### 3. Was the Plan Established or Maintained by an Employer Intending to Benefit Employees?

The last criteria that must be satisfied in order to qualify as an ERISA plan is that the Plan must have been established or maintained by an employer intending to benefit plan participants. McNeil, 205 F.3d at 189. "The purchase of a policy or multiple [insurance] policies covering a class of employees offers substantial evidence that a plan . . . has been established." Memorial Hosp. Sys., 904 F.2d at 242.

Defendants contend that Lamarque established and maintained the Plan with the intent that it benefit its employees. Plaintiff does not dispute Defendants' factual allegations on this issue.

Lamarque purchased a group health insurance policy through Coventry Louisiana.[29] Although the "bare purchase" of an insurance policy does not establish an ERISA plan, in this case, Lamarque has done more than just make a purchase. See Taggert Corp. v. Life & Health Benefits Administration, Inc., 617 F.2d 1208 (5th Cir. 1980). Hawkins, who functions as an employee benefits administrator, testified that the Plan established by Lamarque was "intended to provide medical, surgical, and/or hospital care benefits to Lamarque employees."[30] Lamarque plays an active role in plan

---

[29]     Id.

[30]     Id.

administration and permits Coventry Louisiana to publicize the Plan to Lamarque employees.[31]  Lamarque purchased a policy offering a broad package of benefits that are obviously intended to benefit employees participating in the Plan.

Accordingly, the court finds that the Plan qualifies as an ERISA plan and **GRANTS** Defendants' motion for summary judgment on the issue.

In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff asserts that Defendants produced an insurance policy and administrative agreement, not a plan as defined by ERISA.  The court finds Plaintiff's argument unavailing.  It has been determined that the Plan qualifies as an ERISA plan and, as pointed out by Defendants, "a formal document designated as 'the Plan' is not required to establish that an ERISA plan exists." Memorial Hosp. Sys., 904 F.2d at 241.

Plaintiff also argues that Defendants have no standing to bring this action.  Again, the court finds Plaintiff's argument to be unpersuasive.  The court recognizes that 29 U.S.C. § 1132 provides that a civil action may be brought under ERISA by a plan "participant," "beneficiary," "fiduciary," or by the Secretary of Labor.  The court also recognizes that the Fifth Circuit is "loathe to ignore the legislature's specificity" regarding the parties who may bring an ERISA civil action.  Hermann Hosp. v. MEBA Medical &

---

[31]    Id.

<u>Benefits Plan</u>, 845 F.2d 1286, 1288-89 (1988).  However, it was Plaintiff, not the defendant insurers that brought this action before the court.  Plaintiff provides no support for an assertion that Defendants are prohibited from introducing summary judgment evidence of the existence of an ERISA plan.  As noted by Defendants, an insurer's defense against state law claims on the grounds that the insurance plan is an ERISA plan is a common one.  <u>See</u> <u>e.g.</u> <u>Shearer</u>, 516 F.3d at 279; <u>McNeil</u>, 205 F.3d at 189-90; <u>Meredith</u>, 980 F.2d at 353; <u>Memorial Hosp. Sys.</u>, 904 F.2d at 238, 241.

**C.  Are Plaintiff's State Law Claims Preempted by ERISA?**

Defendants ask this court to dismiss Plaintiff's state law claims for negligence, negligent misrepresentation, breach of contract, and violations of the Texas Insurance Code Article 21.21 and Texas Business and Commercial Code.  Defendants assert that these claims are preempted by ERISA because they "relate to" an employee benefit plan.  In response, Plaintiff Hospital contends, inter alia, that its claims are not preempted by ERISA because Plaintiff Hospital is asserting: (1) independent causes of action as a third party health care provider directly against Defendants who misrepresented insurance coverage; and (2) contract claims that do not directly affect or modify the relationship between Defendants and plan participants or beneficiaries.

While preemption is clearly appropriate when a state cause of

16

action directly affects the relationship among traditional ERISA entities (i.e., the employer, the plan and its fiduciaries, the participants, and the beneficiaries), it is similarly inappropriate when it has the effect of shielding those entities from claims brought by independent third parties who were not intended partners in the "ERISA bargain" imposed by Congress.  See Memorial Hosp. Sys., 904 F.2d at 249-50.

The court has determined that an ERISA plan exists in this case and now must look to whether Plaintiff Hospital's state law claims relate to an employee benefit plan and whether, as Plaintiff challenges, the hospital is bringing its claims as an independent third party.  The Fifth Circuit has previously considered these issues under a very similar fact scenario.

In Transitional Hosp. Corp., an ERISA plan participant ("Participant") was hospitalized in THC-Houston ("THC"), a medical facility owned by the plaintiff.  See 164 F.3d at 952.  The plaintiff alleged that, before Participant was admitted, the defendant insurance company misrepresented that its ERISA plan would reimburse THC for all of the hospital expenses beyond those covered by Participant's Medicare benefits.  Id.  Relying on this representation of coverage, THC provided Participant with care valued at more than $494,000.00.  Id.  When THC requested payment, though, it learned that it was actually entitled to only a small fraction of its expenses because THC was a "nonparticipating

hospital" under the relevant ERISA plan.  <u>Id.</u>

To collect the difference, THC filed suit in state court alleging breach of contract, common law misrepresentation, and statutory misrepresentation under the Texas Insurance Code.  <u>Id.</u> at 954.  The defendants removed the matter to federal court and argued that the hospital's state law claims were preempted by ERISA.  <u>Id.</u> The district court granted summary judgment in favor of the defendants, holding that ERISA preempted the claims.  <u>See id.</u> at 956.  On appeal, the Fifth Circuit reversed, explaining that:

> THC's state-law claims alleging common law misrepresentation and statutory misrepresentation under the Texas Insurance Code Art. 21.21 are not dependent on or derived from [Participant's] right to recover benefits under the [ERISA] plan. Rather, THC alleged that, "to the extent that [Participant] is not covered by the [p]olicy as represented by [the insurance company] to THC," [the d]efendants made misrepresentations actionable under common law and the Texas Insurance Code.

<u>Id.</u> at 955.

To reach this conclusion, the <u>Transitional</u> court assimilated a series of prior cases that defined the ERISA preemption framework and articulated the test courts are to apply when considering state law claims in cases that involve at least some ERISA plan coverage. Under that test, a court must first determine whether the patient involved had any insurance coverage at all.  <u>See id.</u>  If he did not, then there can be no ERISA preemption as a matter of law, and the inquiry ends without further discussion.  <u>See id.</u> However, if the patient was covered even in part by an ERISA plan, the test

requires the court to "take the next analytical step and determine whether the claim in question is dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." Id. If it is not dependent on or derived from a right held by a beneficiary, then the claim cannot be preempted by ERISA. See id.

The facts of the instant case are very much akin to those to presented in Transitional, and require a similar result.

Here, Plaintiff Hospital alleges that Defendants' agent made representations that led it to believe that Defendants would cover Mark's claim as an "in network" hospital via the pricing of the First Health Network.[32] To the contrary, after Mark was discharged, Defendants insisted that Plaintiff Hospital was "out-of-network" and that the First Health repricing was not applicable.[33] Plaintiff Hospital asserts that Defendants paid only $88,977.00 of the $315,068.75 in medical expenses that were incurred.[34] Plaintiff Hospital maintains that it made a specific inquiry into Mark's coverage and benefits and Defendant responded with a misrepresentation.

Pointing to Defendants' alleged misrepresentation, Plaintiff Hospital contends that the insurance companies are liable for

---

[32]    Plaintiff's Original Petition, Docket Entry No. 1, pp. 3-4.

[33]    Id.

[34]    Id.

common law negligence, negligent misrepresentation, breach of contract, and violations of the Texas Insurance Code and Texas Business and Commerce Code. Plaintiff Hospital does not allege that its causes of action are in any way based on an assignment of benefits under the ERISA plan, related to an improper processing or denial of plan benefits, or premised on an attempt to modify plan obligations.[35] Instead, Plaintiff Hospital contends that it relied on Defendants' representations concerning Mark's coverage and benefits under Plaintiff Hospital's contract with First Health, which provided for discounted rates for prompt payment of claims.

Applying the Transitional test to these facts, the court first determines that Defendants' payment of $88,977.00 establishes that "some coverage" of Mark's medical expenses existed under an ERISA plan. See Transitional, 164 F.3d at 955. Next, the court finds that Plaintiff Hospital's state law claims for negligence, negligent misrepresentation, and Texas Code violations are neither dependent on nor derived from a beneficiary's[36] right to recover under the ERISA plan. See id. Because Plaintiff Hospital brought

_____

[35]    See Plaintiff's Original Petition, Docket Entry No. 1.

[36]    A beneficiary for purposes of ERISA is "a person designated by a participant, or by the terms of the employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8); Hollis v. Provident Life & Accident Ins. Co., 259 F.3d 410, 416 (5th Cir. 2001). Hospitals do not have standing under ERISA as third-party beneficiaries. Dallas County Hosp. Dist. v. Assoc. Health & Welfare Plan, 293 F.3d 282, 289 (5th Cir. 2002). Plaintiff's status as an independent, third-party provider is critical to this decision because actions brought under state law by ERISA plan assignees or beneficiaries are almost always preempted. See, e.g., Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (U.S. 2004)("if an individual, at some point in time, could have brought his claim under ERISA . . . then the individual's cause of action is completely pre-empted . . . .").

these claims as an independent, third-party health care provider seeking damages based on an alleged misrepresentation by Defendants, and not on the language of an ERISA plan, the causes of action arise from a commercial interaction independent from the existence of the plan.  See id. at 954 ("ERISA does not preempt state law when the state-law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage."); see also Memorial Hosp. Sys., 904 F.2d at 250.

Plaintiff's negligence, negligent misrepresentation, and Texas Code violation causes of action, therefore, do not raise any issue concerning matters Congress intended to be regulated exclusively by ERISA, and are not preempted.

As to Plaintiff Hospital's breach of contract claim, the Fifth Circuit has instructed that a hospital's state law claim for breach of contract is preempted by ERISA "when the hospital seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the hospital." Transitional Hosp. Corp., 164 F.3d at 954.  Here, Plaintiff Hospital is not seeking to recover benefits as an assignee of Mark's right to benefits.  Plaintiff Hospital bases its claims on an alleged breach of a contract between Plaintiff and First Health.  From these facts, it does not appear that Plaintiff Hospital's state law claim

for breach of contract is preempted by ERISA.  However, Plaintiff has failed to plead a sufficient relationship between First Health and Defendants to impute liability to Defendants for breach of a contract involving First Health.

If Plaintiff Hospital wishes to continue to pursue its breach of contract claim, the court **ORDERS** Plaintiff to replead its claim within ten (10) days from the date of this opinion.  Should Plaintiff Hospital fail to replead so as to state a claim for breach of contract, the court will, sua sponte, dismiss Plaintiff's breach of contract claim for failure to state a claim upon which relief may be granted.

### V.  Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED** and Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

**SIGNED** in Houston, Texas, this 10th day of July, 2008.

Nancy K. Johnson
**United States Magistrate Judge**

22